# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20381-MOORE/Elfenbein

**JOHN MONTFORD**,

      Plaintiff,

v.

**WILLIAM H. PRYOR, JR.**, *et al.*,

      Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION

    **THIS CAUSE** is before the Court on the Federal Defendants',[1] Defendants City of Coral Gables and Coral Gables Police Department's, Defendant American Arbitration Association's, and Defendant Magnetic Resonance Institute's, respective Motions to Dismiss Plaintiff John Montford's ("Plaintiff") Complaint. *See generally* ECF Nos. [9, 10, 11, 34]. Having reviewed the Motions to Dismiss, the record,[2] and relevant law, I respectfully **RECOMMEND** that the Motions

---

[1] In the interest of economy, I adopt Counsel for the Federal Defendants' terminology and refer to Defendants Chief Circuit Judge William H. Pryor, Jr., Senior Circuit Judge Gerald Tjoflat, Senior Circuit Judge Lanier Anderson III, Senior Circuit Judge Edward Carnes, Senior Circuit Judge Joel Dubina, Senior Circuit Judge James Edmondson, Senior Circuit Judge Frank Hull, Senior Circuit Judge Charles Wilson, Retired Circuit Judge Rosemary Barkett, and Clerk of Court David Smith of the United States Court of Appeals for the Eleventh Circuit; Senior District Judge William Zloch, Senior District Judge Joan Lenard, Senior District Judge Federico Moreno and District Judge Jose Martinez of the United States District Court for the Southern District of Florida; Marco Rubio, United States Senator, and Frederica Wilson, United States Representative, as the "Federal Defendants."

[2] I ordered Plaintiff to file a Response to the Motions to Dismiss available at docket entries 9 and 34. *See generally* ECF No. [45]. Plaintiff responded with his Motion to Correct the Main Lie Stated in Magistrate Elfenbein's Order to Respond, ECF No. [58], claiming his response was contained in his Motion to Strike available at docket entry 26. No Motion to Strike was filed at docket entry 26, but one was filed at docket entry 31. I have reviewed docket entry 31 and find that does not contain Plaintiff's response, but instead contains a one-page document that essentially argues that "Plaintiff is trying to obey all orders." ECF No. [31].

to Dismiss, ECF Nos. [9, 10, 11, 34], be **GRANTED**.   Additionally, I respectfully **RECOMMEND** that all of Plaintiff's pending *pro se* Motions — save Plaintiff's Motion for a 60-day Extension of Time to Serve, ECF No. [63] — be **DENIED** on the ground that Plaintiff is a restricted filer in this Court, and I recommend that Defendants Stanley Birch, Marcia G. Cooke, Joseph P. Farina, James Caruso, Robert Dube, Ted Bandstra, and Miami-Dade Police Department be **DISMISSED WITHOUT PREJUDICE** as parties to this action pursuant to Federal Rule of Civil Procedure 4(m).

## I.   BACKGROUND

Plaintiff is no stranger to this District.  Over the past thirty-odd years, Plaintiff has initiated no less than eight actions in this Court.[3]  Plaintiff does not hide this fact, nor could he, as the Complaint is premised in part on allegations that Judges in this District conspired to deprive him of his constitutional rights through adverse rulings.  Plaintiff's relations with this Court came to a breaking point in his eighth-filed case when the Honorable Marcia G. Cooke designated Plaintiff a restricted filer due to his vexatious filings.  *See Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [28] at 2 (S.D. Fla. Aug. 8, 2008) ("Plaintiff is hereby barred from filing any civil petition or appeal therefrom unless he has first received leave of court to do so.").

Realizing his restricted filer status in this District, Plaintiff moved on to seek relief in Florida state court.[4]  After a sixteen-year hiatus from filing actions in this District, Plaintiff

---

[3] Those cases are: (1) *Montford v. Metro Dade County, et al.*, No. 93-CV-02335 (Moreno, J.), (2) *Montford v. Child Support Div., et al.*, No. 96-CV-02793 (Moreno, J.), (3) *Montford v. Metro Dade County, et al.*, No. 97-CV-01585 (Highsmith, J.), (4) *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305 (Moreno, J.), (5) *Montford v. Metropolitan Dade, et al.*, No. 99-CV-01262 (Ungaro, J.), (6) *Montford v. Moreno, et al.*, No. 03-CV-23144 (Lenard, J.), (7) *Montford v. Farina, et al.*, No. 06-CV-20638 (Martinez, J.), and (8) *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778 (Cooke, J.).

[4] On September 13, 2023, Plaintiff filed a Complaint in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida alleging violations of the Florida Constitution, 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and the Civil Rights Act of 1964, § 701 *et*

CASE NO. 24-CV-20381-MOORE/Elfenbein

returned to this Court as a result of the Federal Defendants' Notice of Removal, which argues that Plaintiff's claims against the Federal Defendants "relat[e] to acts allegedly taken under color of office or in the performance of [their] official duties" and, therefore, removal is appropriate pursuant to 28 U.S.C. §§ 1442(a)(1) and (3).  *See* ECF No. [1] at 2-3.[5]

The Complaint, now before me, names 28 Defendants: (1) Chief Circuit Judge William H. Pryor, Jr. of the Eleventh Circuit Court of Appeals, (2) Senior Circuit Judge Gerald Tjoflat of the Eleventh Circuit Court of Appeals, (3) Senior Circuit Judge Lanier Anderson III of the Eleventh Circuit Court of Appeals, (4) Senior Circuit Judge Edward Carnes of the Eleventh Circuit Court of Appeals, (5) Senior Circuit Judge Joel Dubina of the Eleventh Circuit Court of Appeals, (6) Senior Circuit Judge James Edmondson of the Eleventh Circuit Court of Appeals, (7) Senior Circuit Judge Frank Hull of the Eleventh Circuit Court of Appeals, (8) Senior Circuit Judge Charles Wilson of the Eleventh Circuit Court of Appeals, (9) Retired Circuit Judge Rosemary Barkett of the Eleventh Circuit Court of Appeals, (10) Retired Circuit Judge Stanley F. Birch Jr. of the Eleventh Circuit Court of Appeals, (11) Clerk of Court David Smith of the Eleventh Circuit Court of Appeals, (12) Senior District Judge William Zloch of the Southern District of Florida, (13) Senior District Judge Joan Lenard of the Southern District of Florida, (14) Senior District Judge Federico Moreno of the Southern District of Florida, (15) District Judge Jose Martinez of the Southern District of Florida, (16) deceased District Judge Marcia G. Cooke of the Southern District of Florida, (17) Retired United States Magistrate Judge Robert Dube of the Southern District of

---

*seq.*, as amended by 42 U.S.C.A. § 2000e *et seq.  See generally* ECF No. [1-3].

[5] Because the Federal Defendants removed this case from state court and Plaintiff did not file the action in this District, I find that Judge Cooke's Order designating Plaintiff a restricted filer does not preclude me from reviewing the Complaint.  *See Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [28] (S.D. Fla. Aug. 8, 2008) ("*Plaintiff is hereby barred from filing* any civil petition or appeal therefrom unless he has first received leave of court to do so." (emphasis added)).

3

Florida, (18) Retired United States Magistrate Judge Ted Bandstra of the Southern District of Florida, (19) Marco Rubio, United States Senator, (20) Frederica Wilson, United States Representative, (21) Miami-Dade County, (22) Miami-Dade Police Department, (23) the City of Coral Gables, (24) the Coral Gables Police Department, (25) the American Arbitration Association, (26) Magnetic Resonance Institute, (27) Retired Circuit Court Judge Joseph P. Farina of the Eleventh Judicial Circuit Court of Florida, and (28) James Caruso, clerk of an unidentified court.  *See* ECF No. [1-3]

Plaintiff claims, in eight counts, that the Defendants "forced [him] to work in a racially hostile work enfironment [*sic*] through battery related fraud in violation of 42 U.S.C. [§] 1983" (Count 1), ECF No. [1] at 10-11; "conspir[ed] to commit battery related fraud in violation of 42 U.S.C. [§] 1985" (Count 2), *id.* at 11-12; violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (Count 3), *see id.* at 12-14; subjected him to employment discrimination in violation of the Civil Rights Act of 1964, § 701 *et seq.*, as amended by 42 U.S.C.A. § 2000e *et seq.* (Count 4), *see id.* at 15-16; denied him due process "through racism" in violation of 42 U.S.C. § 1983 (Count 5), *id.* at 16-18; denied him due process "through conspiracy" in violation of 42 U.S.C. § 1985(3) (Count 6), *id.* at 18-20; denied him due process "through lying and thereby racism" in violation of 42 U.S.C. § 1983 and Article I, sections two and nine, of the Florida Constitution (Count 7), *id.* at 20-22; and denied him due process "through conspiracy" in violation of 42 U.S.C. § 1985(3) and Article I, sections two and nine, of the Florida Constitution (Count 8), *id.* at 22-25. The allegations that purportedly support Plaintiff's claims are as follows:

In January 1984, "Miami Dade Water and Sewer" hired Plaintiff as a "Clerk II[.]"  ECF No. [1-3] at 4.  On October 6, 1988, Plaintiff received a promotion to work as an Inventory Clerk under a supervisor.  *See id.*  In December 1988, Plaintiff filed a police report against the supervisor

for battery and grieved — to an unidentified authority — the supervisor's decision to (1) deprive him of break time and full pay and (2) subject him to "[r]acist treatment[.]"[6]  *Id.* at 5.

On April 15, 1990, Plaintiff received a promotion to Court Service Officer.  In August 1990, Plaintiff was in a car accident allegedly due to one of Dade County's "malfunctioning red lights[.]"  *Id.*  In January 1991, Plaintiff, through counsel, filed a worker's compensation lawsuit for his injuries resulting from his car accident.  *See id.*

In February 1991, Coral Gables Police Department arrested Plaintiff for cashing a forged check during work hours.  *See id.*  Plaintiff claims that the Coral Gables Police Department failed to follow its operating procedures when it arrested Plaintiff before acquiring his time sheets; Plaintiff argues that, if the Coral Gables Police Department would have acquired his time sheets, they would have proved his innocence.  *See id.*  During the pendency of the investigation into the forged checks, Plaintiff's employer restricted him to office duties.  *See id.*  In August 1991, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging that Miami-Dade County subjected him to racist treatment.  *See id.* at 6.  On February 11, 1992, Miami-Dade County terminated Plaintiff following the conclusion of its investigation, finding that Plaintiff likely forged checks.  *See id.*

Following his termination, Plaintiff filed a claim for unemployment compensation, which Miami-Dade County contested.  *See id.*  At a hearing on the matter — occurring on May 1, 1992, before the Unemployment Appeals Commission, counsel for Miami-Dade County claimed it terminated Plaintiff for threatening other employees.  *See id.*  This claim resulted in Plaintiff's unemployment income being delayed until October 1992.  *See id.*

---

[6] Plaintiff does not describe the racist treatment he endured with any degree of detail.  *See generally* ECF No. [1-3].

In or around July 1992, an employment termination hearing was held before a hearing officer associated with the American Arbitration Association.  *See id.*  It is unclear what alleged injury occurred at this hearing.  *See generally* ECF No. [1-3].

In November 1993, Plaintiff filed his first federal lawsuit in this District, *see Montford v. Metro Dade County, et al.*, No. 93-cv-02335, ECF No. [1] (S.D. Fla. Nov. 29, 1993), with the Honorable Federico Moreno presiding.  *See* ECF No. [1-3] at 6.  During the pendency of the proceeding, Magnetic Resonance Institute responded to a Court-issued subpoena but allegedly refused to disclose all communications with Miami-Dade County concerning Plaintiff's medical appointment on the day he allegedly forged the checks.  *See id.* at 7.  Judge Moreno ultimately dismissed Plaintiff's Complaint due to his failure to comply with the Court's deadlines.  *See id.* Plaintiff appealed the dismissal, but the Honorable R. Lanier Anderson III, Gerald Bard Tjoflat, and Rosemary Barkett affirmed.  *See id.*  Plaintiff alleges, generally, that the Judges involved in this case conspired to prevent him from gathering any evidence to support his claim.  *See id.*

In the Complaint, Plaintiff proceeds to mention his other lawsuits and claims without detail that the Honorable Joan Lenard, Federico Moreno, Jose Martinez, Marcia Cooke, Lanier Anderson III, Gerald Tjoflat, Rosemary Barkett, Frank Hull, Joel Dubina, Charles Wilson, Edward Carnes, Stanley Birch, Jr., William Zloch, and Joseph Farina — all Defendants to this action, engaged in a cover-up to conceal an unexplained conspiracy being perpetrated against him.  *See id.*at 8.

Plaintiff apparently brought the alleged — and, again, unspecified — judicial misconduct to the attention of Senator Marco Rubio and Representative Federica Wilson, but these Defendants took no action to rectify the purported injustice.  *See id.*at 8.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citation omitted).  Unsupported factual allegations and legal conclusions, however, receive no such deference. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015)

(alterations adopted; quoting *Twombly*, 550 U.S. at 555, 570).

When, as here, the plaintiff is proceeding *pro se*, the Court must interpret the complaint liberally because *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). At the same time, the Court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action[.]" *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## III.   DISCUSSION

As discussed in this section, I find that (1) the Federal Defendants', the City of Coral Gables and Coral Gables Police Department's, the American Arbitration Association's, and Magnetic Resonance Institute's respective Motions to Dismiss, ECF Nos. [9, 10, 11, 34], convincingly argue for the dismissal of Plaintiff's claims against them; (2) Plaintiff's numerous pending *pro se* Motions are in violation of Judge Cooke's Order designating him a restricted filer and, thus, must be denied, *see generally Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [28]; and (3) Defendants Stanley Birch, Joseph P. Farina, James Caruso, Robert Dube, Miami-Dade Police Department, and Ted Bandstra should be dismissed from this action due to Plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m) and for failing to establish good cause to excuse his noncompliance with the rule. I explain my reasoning below.

### A.   <u>Federal Defendants' Motion to Dismiss</u>

The Federal Defendants' filed a Motion to Dismiss, arguing four grounds for dismissal. First, the Federal Defendants argue that the Court should dismiss Plaintiff's claims against them for lack of subject-matter jurisdiction because Plaintiff sues them in their official capacities, and

the United States has not waived its sovereign immunity.  *See* ECF No. [9] at 4-6.  Second, the

Federal Defendants argue that the Court should dismiss Plaintiff's claims against Senator Marco

Rubio and Representative Frederica Wilson (hereinafter collectively referred to as "the

Legislators") under the doctrine of legislative immunity.  *See id.* at 6-7.  Third, the Federal

Defendants argue that the Court should dismiss Plaintiff's claims against Judges Tjoflat, Anderson,

Carnes, Dubina, Edmonson, Hull, Wilson, Barkett, Zloch, Lenard, Moreno, Martinez, and Clerk

of Court David Smith (hereinafter collectively referred to as "the Judicial Officers") under the

doctrine of judicial immunity.  *See id.* at 7-8.  Finally, the Federal Defendants argue that the Court

should dismiss Plaintiff's claims against them because the Complaint is an impermissible shotgun

pleading that violates Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure.  *See id.* at 8-

10.  I find the Federal Defendants' first, second, and third arguments for dismissal persuasive and

recommend that Judge Moore grant the Federal Defendants' Motion to Dismiss on those grounds.[7]

## 1.     *Sovereign Immunity*

The Court lacks subject-matter jurisdiction over Plaintiff's claims against the Federal

Defendants as sovereign immunity applies to the extent Plaintiff sued them in their official

capacity.  "It is axiomatic that the United States may not be sued without its consent and that the

existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell,* 463 U.S. 206,

212 (1983). Indeed, "[a] waiver of sovereign immunity 'cannot be implied but must be

unequivocally expressed.'"  *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United

States v. King,* 395 U.S. 1, 4 (1969)).  The plaintiff must establish the existence of such a waiver,

absent which "courts have no subject matter jurisdiction over cases against the [federal]

---

[7] As sovereign immunity, legislative immunity, and judicial immunity are dispositive of Plaintiff's claims against the Federal Defendants, the Court need not reach the issue of whether the Complaint is a shot-gun pleading and whether leave to amend is appropriate.

government." *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015) (alteration in original).  When

suing a federal officer in his or her official capacity, sovereign immunity likewise extends to the

actions of that federal officer, including federal judges and members of Congress.  *See Alter v.*

*U.S. Supreme Ct.*, No. 2:23-CV-05579-ODW-PD, 2023 WL 4873627, at *3 (C.D. Cal. July 31,

2023) (finding that doctrine of sovereign immunity barred claims against the Supreme Court

Justices in their official capacity); *Smith v. Scalia*, No. 14-5180, 2015 WL 13710107, at *1 (D.C.

Cir. Jan. 14, 2015) (summarily dismissing appeal when claims were "based entirely on [the

appellant's] dissatisfaction with acts taken by appellees in their capacity as judges" and the

appellant failed to show any precedent that would support his claims for damages or otherwise

establish a waiver of sovereign immunity); *Peterson v. Timme*, 621 F. App'x 536, 541 (10th Cir.

July 30, 2015) (concluding that the plaintiff faced "a significant — and ultimately insurmountable

— obstacle: that is, sovereign immunity" when he filed suit against a federal judge in his official

capacity and failed to identify any waiver of sovereign immunity, thereby depriving the court of

subject-matter jurisdiction to hear such a claim); *Rockefeller v. Bingaman*, 234 F. App'x 852, 855

(10th Cir. 2007) (finding that sovereign immunity applied to a member of the House of

Representatives and a U.S. Senator, explaining that, when "acting in their official capacities, [they]

enjoy the envelope of the Congress' sovereign immunity[.]").

Here, the Complaint purports to state claims against the Federal Defendants in their official

capacity; that is, it seeks relief and damages from federal judges, a congresswoman, a senator, and

a clerk of court for the actions they took in such official roles.  However, Plaintiff's Complaint

does not address or otherwise acknowledge the existence of sovereign immunity, much less a

waiver of sovereign immunity.  And, as the Federal Defendants point out, none of the possible

claims he advances against them in Counts VII and VIII for purported violations of 42 U.S.C. §

1983, 42 U.S.C. § 1985, and the Florida Constitution, provide for a waiver of sovereign immunity. Absent such an explicit waiver, this Court lacks subject-matter jurisdiction over Plaintiff's claims against the Federal Defendants, requiring dismissal of Plaintiff's claims against them.  On this basis, I recommend dismissal of Plaintiff's claims against the Federal Defendants, but as further explained below, I also recommend dismissal on alternative grounds.

### 2.   *Legislative Immunity*

Even if sovereign immunity did not apply, the doctrine of legislative immunity bars Plaintiff's Florida and federal claims against the Legislators.  Both Florida and federal courts have recognized the right of "legislators to be free from arrest or civil process for what they do or say in legislative proceedings[.]" *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951); *see Fried v. State*, 355 So. 3d 899, 906 (Fla. 2023) ("Legislative immunity is commonly understood as a doctrine that protects legislators from being sued for all actions taken in their lawmaking capacity and is a doctrine broadly recognized by federal and state courts alike." (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998))).  Legislative immunity for United States Senators and Representatives derives from the Speech and Debate Clause, United States Constitution, Article I, § 6, and extends broadly to bar criminal prosecution or civil suit based on "anything 'generally done in a session of the House [or Senate] by one of its members in relation to the business before it.'" *Gravel v. United States*, 408 U.S. 606, 624 (1972) (quoting *Kilbourn v. Thompson*, 103 U.S. 168 (1880)).

Plaintiff makes only threadbare allegations against Senator Rubio and Representative Wilson, claiming that "Plaintiff filed and requested Congresswoman Frederica Wilson and Senator Marco Rubio to forward the evidence and request to have the LAWS obeyed to the House Judiciary Committee (HJC)[,]" ECF No. [1-3] at 9 (emphasis in original), and that "Senator Marco Rubio and Congresswoman Frederica Wilson helped continue this Conspiracy by not forwarding the

complaint to the HJC," *id.* at 21.  However, Senator Rubio and Representative Wilson's decision "not to take legislative action in response to [Plaintiff's] prompts" is protected under the Speech and Debate Clause.  *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (citing *Doe v. McMillan*, 412 U.S. 306, 311, 312-13 (1973); quotation omitted)).  Therefore, Plaintiff's claims against Senator Marco Rubio and Representative Frederica Wilson are doctrinally barred.

### 3.    *Judicial Immunity*

Similarly, even if sovereign immunity did not apply, the doctrine of judicial immunity bars Plaintiff's Florida and federal claims against the Judicial Officers[8].  Under Florida and federal law, judges are entitled to absolute judicial immunity from damages for acts taken in their judicial capacity unless they act in the absence of all jurisdiction.  *See Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity[.]").  "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority; rather, [s]he will be subject to liability only when [s]he has acted in the 'clear absence of all jurisdiction.'"  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (footnote omitted; quoting *Bradley v. Fisher*, 80 U.S. 335, 336 (1871)).  "Clerks of the court [also] have absolute immunity for a narrow range of acts 'they are specifically required to do under court order or at a judge's direction . . . .'"  *Darst v. Scriven*, No. 22-10918, 2023 WL 2401331, at *2 (11th Cir. Mar. 8, 2023) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981));[9] *see also Fong*, 105 So.

---

[8] When I use the phrase "Judges," I am referring to Judges Pryor, Tjoflat, Anderson, Carnes, Dubina, Edmonson, Hull, Wilson, Barkett, Zloch, Lenard, Moreno, and Martinez, and when I use the phrase "Judicial Officers," I am referring to the Judges and Clerk of Court David Smith.

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981.  *See id.* at 1207.

3d at 652 ("Th[e] doctrine [of judicial immunity] has been extended to quasi-judicial officials, such as a clerk of court, performing judicial acts." (citing *Off. of State Att'y, Fourth Jud. Cir. of Fla. v. Parrotino*, 628 So. 2d 1097, 1098 (Fla. 1993))).

Plaintiff sues the Judges party to this action for the adverse decisions they issued against him, which Plaintiff frames as the fixing of cases.  *See* ECF No. [1-3] at 2, 21, 23, 25.  And with respect to Clerk Smith, Plaintiff makes the unsubstantiated and conclusory allegation that this Defendant is complicit in the alleged injustice perpetrated against him by the Judges, presumably for his part in the issuance of decisions adverse to Plaintiff's interests.  Neither allegation establishes that these Defendants acted in the absence of all jurisdiction, nor is there anything in the record to support such an allegation.  Thus, the doctrine of judicial immunity applies, and Plaintiff's claims against the Judicial Officers are doctrinally barred.

For the foregoing reasons, I recommend that the Federal Defendants' Motion to Dismiss, ECF No. [9], be granted, and Plaintiff's claims against the Legislators and the Judicial Officers be dismissed with prejudice.

### B.       The City of Coral Gables and Coral Gables Police Department's Motion to Dismiss

The City of Coral Gables and Coral Gables Police Department (hereinafter referred to collectively as "the City") filed a Motion to Dismiss, arguing three grounds for dismissal.  First, the City contends that the Complaint should be dismissed because Judge Cooke has designated Plaintiff a restricted filer.  *See* ECF No. [34] at 10.  Second, the City asserts that the doctrine of *res judicata* bars Plaintiff's claims.  *See* ECF No. [34] at 11-13.  And third, the City argues that Plaintiff's claims are untimely under the statute of limitations.  As I have already discussed, I find that Plaintiff's Complaint is beyond the scope of Judge Cooke's order, *see supra* note 5; and in any event, I find that the Motion's other two grounds for dismissal are convincing.

1.     *Res Judicata*

The doctrine of *res judicata* bars Plaintiff's Florida and federal claims against the City. The doctrine of *res judicata*, also known as "claim preclusion," "is a judicially crafted doctrine, created to provide finality and conserve resources." *Maldonado v. U.S. Att'y. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). *Res judicata* applies if the following four elements are present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (footnote omitted). *Res judicata* bars not only those claims raised in the first suit; but also bars those claims which the plaintiff could have raised in the prior suit, if those claims arise "out of the same nucleus of operative fact as a former action." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000) (quotation and alteration omitted). After reviewing the Complaint, I find that all four elements of the *res judicata* standard are present in this case.

As to the first element, Plaintiff named the City in at least four prior cases decided in this District, all of which were adjudicated on the merits. In the first of those cases, the Court dismissed Plaintiff's claims against the City with prejudice for failure to state a claim. *See generally Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305, ECF No. [196] (S.D. Fla. Aug. 3, 2021) (recommending that Plaintiff's claims against the City be dismissed with prejudice for failure to state a claim); *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305, ECF No. [206] (S.D. Fla. Sep. 24, 2001) (adopting the recommendation of the United States Magistrate Judge). The Court came to similar conclusions in Plaintiff's subsequently filed cases. *See generally Montford v. Moreno, et al.*, No. 03-cv-23144, ECF No. [7] (S.D. Fla. May 3, 2004)

(dismissing Plaintiff's claims against the City); *Montford v. Farina, et al.*, No. 06-CV-20638, ECF No. [17] (S.D. Fla. Aug. 10, 2006) (recommending that Plaintiff's claims against the City be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)); *Montford v. Farina, et al.*, No. 06-CV-20638 ECF No. [21] (S.D. Fla. Aug. 23, 2006) (adopting the recommendation of the United States Magistrate Judge); *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [13] (S.D. Fla. July 25, 2008) (dismissing Plaintiff's claims against the City with prejudice pursuant to 28 U.S.C. § 1915(e)(2)).  Because Plaintiff's claims against the City have previously been dismissed with prejudice for his failure to state a claim, the first element of the *res judicata* standard is satisfied.  *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013) ("We also conclude that the September 10, 2009, order was an adjudication on the merits because the order was a Rule 12(b)(6) dismissal with prejudice." (citations omitted)).

Second, when the Court dismissed Plaintiff's claims against the City in *Montford v. Metropolitan Dade County, et al*., No. 98-CV-01305, a court of competent jurisdiction dismissed them.  "A court of competent jurisdiction is a court with the power to adjudicate the case before it. . . .  [T]his Court has understood the phrase court of competent jurisdiction as a reference to a court with an existing source of subject-matter jurisdiction."  *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91-92 (2017) (citations and quotation omitted).  In his complaint filed in *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305, Plaintiff raised his claims against the City under § 1983 for violations of the First, Fifth, Sixth, and Fourteenth Amendments.  ECF No. [1] at 2-4.  Because Plaintiff pleaded a constitutional violation on the face of the complaint, the Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed

by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

Third, the City was a party to the suit filed in *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305, as well the suits filed in *Montford v. Moreno, et al.*, No. 03-cv-23144, *Montford v. Farina, et al.*, No. 06-CV-20638, and *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778.

Finally, *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305 — as well as *Montford v. Moreno, et al.*, No. 03-CV-23144, *Montford v. Farina, et al.*, No. 06-CV-20638, and *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778 — arise "out of the same operative nucleus of fact" as the instant case. *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998) (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1358-59 (11th Cir. 1992)). Both this case and Plaintiff's previously filed cases relate back to alleged discriminatory practices while employed by Miami-Dade County and the City's alleged part in events that led to Plaintiff's dismissal from Miami-Dade County's employ. *See generally* ECF No. [1-3]; *Montford v. Metropolitan Dade County, et al.*, No. 98-CV-01305, ECF No. [159] (S.D. Fla. Nov. 1, 2000); *Montford v. Moreno, et al.*, No. 03-CV-23144, ECF No. [5] (S.D. Fla. Apr. 12, 2004); *Montford v. Farina, et al.*, No. 06-CV-20638, ECF No. [1] (S.D. Fla. Mar. 14, 2006); *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [1] (S.D. Fla. June 23, 2008).

In sum, because each element of the *res judicata* standard is satisfied in this case, Plaintiff's claims against the City are barred.

## 2. *Statute of Limitations*

Plaintiff's claims against the City are also untimely under the statute of limitations. Plaintiff names the City in Counts Five, Six, Seven, and Eight, alleging violations of the Florida

Constitution and 42 U.S.C. §§ 1983 and 1985(3).  *See* ECF No. [1-3] at 16-24.  "Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983."  *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (quotation omitted).  Furthermore, "[c]onspiracy claims under [§] 1985 share the forum state's statute of limitations for tort claims."  *Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024) (citation omitted).  In Florida, a Plaintiff has four years from the date his claim accrues to file suit under 42 U.S.C. §§ 1983 and 1985.  *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985." (citations omitted)).  Claims arising from violations of the Florida Constitution are subject to the same four-year statute of limitations.  *See* Fla. Stat § 95.11(3) (providing a four-year statute of limitations for "[a]ny action not specifically provided for in these statutes").

Plaintiff's allegations against the City relate back to his February 1991 arrest and the City's alleged failure to follow its standard operating procedure in effectuating that arrest.  *See* ECF No. [1-3] at 5.  Based on the barebones factual allegations concerning this incident, I conclude that Plaintiff's related claims accrued in February 1991 and, therefore, Plaintiff had four years from that time to bring his claims against the City.  *See Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1123 (11th Cir. 2017) ("[A]ccording to the Supreme Court, the ordinary rule is that a § 1983 claim accrues 'when the plaintiff has 'a complete and present cause of action.'" (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007))); *Wainberg*, 93 F.4th at 1225 (holding that a § 1985 claim accrues "when 'facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996))); *Hearndon v. Graham*, 767 So. 2d 1179, 1184-85 (Fla. 2000)

("A statute of limitations runs from the time the cause of action accrues which, in turn, is generally determined by the date when the last element constituting the cause of action occurs." (citation and quotation omitted)).  Because Plaintiff's claims against the City accrued more than thirty ago, they are untimely and, thus, should be dismissed with prejudice.

For the foregoing reasons, I recommend that the City's Motion to Dismiss, ECF No. [34], be granted and that Plaintiff's claims against the City be dismissed with prejudice.

### C.    American Arbitration Association Motion to Dismiss

The American Arbitration Association ("AAA") filed a Motion to Dismiss in which it argues that dismissal is appropriate because (1) the doctrine of arbitral immunity bars Plaintiff's claims against it, (2) the claims are untimely under the relevant statute of limitations, and (3) Plaintiff failed to plausibly allege facts to state a claim.[10]  I find that arbitral immunity and the statute of limitations bar Plaintiff's claims against AAA.

#### 1.    *Arbitral Immunity*

First, the Court should dismiss Plaintiff's claim against AAA because arbitrators are immune from suit.  It is well-settled under both Florida and federal law that arbitrators have such immunity.  *See, e.g.*, *Olson v. National Ass'n of Secs. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996) ("Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators" (citations omitted)); *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977) (concluding that "arbitral immunity should be extended to cases where the authority of an arbitrator to resolve a dispute is challenged"); *Fernandez v. Wells Fargo Sec., LLC*, No. 14-CV-62295, 2014 WL 11776952, at *2 (S.D. Fla. Dec. 29, 2014) (finding that claims against arbitrators "are barred under the doctrine of arbitral

---

[10] As arbitral immunity and the statute of limitations are dispositive of Plaintiff's claims, the Court need not reach the issue of whether the Complaint states a claim for relief and whether leave to amend is appropriate.

immunity, which immunizes arbitrators, arbitration forums, their commercially sponsoring organizations, and their employees from civil liability for actions taken in connection with administering an arbitration."); *Bradley v. Logue*, 2006 WL 2166722, at *3 (N.D. Ga. July 27, 2006) ("Courts have uniformly recognized the doctrine of arbitral immunity, finding that arbitrators and organizations that sponsor arbitrations are immune from civil liability for acts performed within the scope of the arbitral process."); *Precision Mech., Inc. v. Karr*, 2005 WL 3277966, at *7–8 (M.D. Fla. Dec. 2, 2005) (arbitrators, commercially sponsoring organizations, and employees "are immune from civil liability for all acts performed in their arbitral capacity"); § 682.051(1), Fla. Stat. Ann. ("An arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity.").

Plaintiff alleges that AAA's hearing officer withheld information during his arbitration with Miami-Dade County by blocking the defendants in that proceeding from answering material questions, thereby helping them lie. *See* ECF No. [1-3] at 6, 17. Conducting arbitration proceedings and making decisions about what is and is not admissible falls clearly within the scope of the arbitral process. As these are decisions that judges commonly perform, quasi-judicial immunity extends to such acts of an arbitrator and organizations that sponsor arbitrations, such as AAA. As a result, I find that arbitral immunity applies to Plaintiff's claims against AAA and recommend that such claims be dismissed with prejudice.[11]

---

[11] Plaintiff does not allege the outcome of the arbitral proceedings in which he participated, but, for purposes of this Report, I will assume that an arbitral award was made upon either party. *See generally* ECF No. [1-3]. Under 9 U.S.C. § 10, arbitral awards can be vacated by a district court upon a showing that (1) "the award was procured by corruption, fraud, or undue means;" (2) "there was evident partiality or corruption in the arbitrators, or either of them;" (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" and (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

### 2.        *Statute of Limitations*

Although it is unclear which particular counts are asserted against AAA, Plaintiff mentions AAA in Counts Five, Six, Seven, and Eight of the Complaint, alleging violations of the Florida Constitution and 42 U.S.C. §§ 1983 and 1985(3).  *See* ECF No. [1-3] at 16-24.  As previously discussed, Plaintiff had four years from the date his claims accrued to file suit for violations of his state and federal rights.  *See supra* III.B.2 at 16-18.  Plaintiff's claims against AAA relate back to an arbitration that took place in July 1992.  *See* ECF No. [1-3] at 6.  Based on the limited facts alleged in the Complaint, I find that the claims Plaintiff alleges against AAA accrued in July 1992, and he had four years from their accrual to file suit.  As Plaintiff filed the Complaint approximately 31 years after the alleged arbitration hearing that gave rise to his claims against AAA, the statute of limitations bars Plaintiff's claims against AAA.

For the foregoing reasons, I recommend that AAA's Motion to Dismiss, ECF No. [10], be granted and that Plaintiff's claims against AAA be dismissed under the doctrine of arbitral immunity and as untimely under the statute of limitations.

### D.        <u>Magnetic Resonance Institute's Motion to Dismiss</u>

Finally, Magnetic Resonance Institute's ("MRI") Motion to Dismiss argues that the Court should dismiss Plaintiff's claims against it because (1) the statute of limitation bars them and (2) Plaintiff failed to allege sufficient factual matter to state a claim.[12]  *See generally* ECF No. [11-1].  I recommend that Judge Moore grant MRI's Motion to Dismiss under the statute of limitations.

---

award upon the subject matter submitted was not made."  *Id.* at (a)(1)-(4).  Assuming Plaintiff's claims of bias and fraud are true, he had a federal judicial remedy to address this injustice.

[12] As the statute of limitations defense is dispositive of Plaintiff's claims, the Court need not reach the issue of whether the Complaint states a claim for relief and whether leave to amend is appropriate. With that said, the Court notes that Plaintiff only mentions MRI five times in the Complaint; and in relation to those references, Plaintiff says little more than it failed to comply with a subpoena.  Plaintiff does not articulate how this alleged failure to comply with a subpoena amounted in a violation of either Florida or federal law.

CASE NO. 24-CV-20381-MOORE/Elfenbein

The statute of limitations bars Plaintiff's claims against MRI.  Plaintiff names MRI in Counts Seven and Eight of the Complaint, alleging violations of the Florida Constitution and violations of 42 U.S.C. §§ 1983 and 1985(3).  *See* ECF No. [1-3] at 20-24.  As previously discussed, to file suit for violations of the Florida Constitution or 42 U.S.C. §§ 1983 and 1985(3), the plaintiff must file the action within four years of the claim's accrual.  *See supra* III.B.2 at 16-18.

Plaintiff's claims relate back to 1993 when MRI allegedly failed to comply with a subpoena issued in *Montford v. Metro Dade County, et al.*, No. 93-cv-02335.  *See* ECF No. [1-3] at 6-7. Plaintiff had four years from the time of MRI's alleged discovery violation to bring a claim (assuming, without deciding, that a private right of action would exist for such a claim).  Therefore, because the alleged injury occurred roughly thirty years ago, the four-year statute of limitations bars Plaintiff's Florida and federal claims.  For this reason, I recommend that MRI's Motion to Dismiss, ECF No. [11], be granted, and that Plaintiff's claims against MRI be dismissed as untimely under the statute of limitations.

### E.   Leave to Amend

Typically, before a court dismisses a *pro se* plaintiff's claims with prejudice, the Court will allow the plaintiff to amend them.  *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991), *overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).  However, a court need not grant a plaintiff leave to amend, if any attempt to amend would be futile.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam).  "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed . . . ."  *Id.*; *see also Brown v. Johnson*, 387 F.3d 1344, 1348 (11th Cir. 2004) ("[A] *pro se* plaintiff . . . should be afforded . . . [an] opportunity . . . to amend his complaint prior

to its dismissal for failure to state a claim, unless the court can rule out any possibility that an amended complaint would succeed in stating a claim." (alteration adopted; quotation omitted)).

Plaintiff's claims against the Federal Defendants, the City, AAA, and MRI cannot be cured by amendment because the claims against them are barred. Specifically, the doctrines of sovereign immunity, judicial immunity, legislative immunity, arbitral immunity, *res judicata* and the statute of limitations apply to Plaintiff's claims as explained above. Any amendment of the Complaint would, therefore, be futile, so I recommend that the Court dismiss the claims against the Federal Defendants, the City, AAA, and MRI with prejudice.

### F.    <u>Plaintiff's Pending Motions</u>

Plaintiff currently has 36 Motions pending in this case ("Plaintiff's Motions"). *See generally* ECF Nos. [14, 15, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 40, 41, 42, 52, 53, 54, 55, 57, 58, 60, 64, 66, 67, 68, 69]. Among these are Plaintiff's "Motion to Obey the Screams from Law/Justice[,]" ECF No. [14], "Motion to Clarify the Main Lie Used in this Criminal, Lying Spree of a Racist Conspiracy[,]" ECF No. [35], and "Motion to Agree the 11th Circuit is Proven to be a Racist [Kangaroo] Court[,]" ECF No. [40]. Judge Cooke's Order designating Plaintiff a restricted filer was abundantly clear: "The CLERK is directed that any paper received from Plaintiff John Montford, unless signed by an attorney admitted to practice before this Court, or unless leave to file has been granted, be rejected for filing." *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [28] at 2 (S.D. Fla. Aug. 8, 2008) (emphasis and citations omitted, caps in original). A review of Plaintiff's Motions reveals that an attorney admitted to practice law in the Southern District of Florida has not signed any of them, and a review of the record in this case reveals that this Court has not given Plaintiff leave to file them either. Unlike Plaintiff's Complaint, which is before the Court upon the Federal Defendants'

CASE NO. 24-CV-20381-MOORE/Elfenbein

Notice of Removal, *see generally* ECF No. [1], Plaintiff's Motions are all filed *pro se* and, thus, must be denied as being in clear violation of Judge Cooke's Order designating Plaintiff a restricted filer.

### G.      The Unserved Defendants

Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part that if a defendant is not served within 90 days after the complaint is filed, the Court "— on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*   When a complaint is removed, the 90-day period to serve set forth in Rule 4(m) is calculated from the date of the notice of removal. *See Mochrie v. R.J. Reynolds Tobacco Co.*, No. 2:16-CV-306-FTM-38CM, 2016 WL 6681062, at *3 (M.D. Fla. Nov. 14, 2016) ("In removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court." (citation omitted)); *see also Cardenas v. City of Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011) ("The same 120-day period applies where suits are removed to federal court from state court, except that the period commences upon the date of removal." (citations omitted)).

On April 30, 2024, I entered an Order to Serve after identifying eight Defendants who appeared unserved. *See generally* ECF No. [59]. After explaining the requirements of Rule 4(m), I ordered Plaintiff to "perfect service upon the [u]nserved Defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure or show cause why he has not . . . by May 10, 2024[.] *Id.* at 2. Plaintiff filed a Motion for a 60-day Extension of Time to Serve the Unserved Defendants (the "Motion") by my deadline, in which he explained in pertinent part that he shipped a service packet to the Fulton County Sherriff for service on an unidentified Defendant(s) but service was never perfected and that he served the Honorable Marcia G. Cooke on December 20 and 21, 2023,

23

*see* ECF No. [63] at 1.  Plaintiff also purported to provide proof of service for Defendants Miami-Dade County and Retired Magistrate Judge Ted Bandstra, *see id.* at 3-4.  With respect to the other Defendants, Plaintiff does not explain why he has yet to serve them.  *See id.* at 1.

As to the merits of the Motion, Plaintiff submitted a return of service for Defendant Miami-Dade County that appears to comply with Florida Statutes § 48.111(1).  *See id.* at 3.  However, that is all the Motion accomplishes.  First, Plaintiff states that he sent a service packet to the Fulton County Sheriff on an unknown date but does not explain who the Sheriff was meant to serve, how he will effectuate service upon the unidentified Defendant(s,) or why service has not been accomplished to date.

Second, Plaintiff claims that he served Marcia G. Cooke in December 2023, but does not provide a return of service — as he did with Defendants Miami-Dade County and Ted Bandstra — to support his claim, nor could he as the Honorable Marcia G. Cooke passed away on January 27, 2023, and deceased persons cannot be served.  *See Talley v. City of LaGrange, Georgia*, No. 23-CV-32, 2023 WL 8114369, at *4 (M.D. Ga. Nov. 22, 2023) (finding that the deceased defendants could not be served); Jay Weaver, *Marcia Cooke, Florida's first Black female federal judge, dies at 68*, Miami Herald (Jan. 27, 2023, 9:45 PM), https://www.miamiherald.com/news/local/article262782983.html.

Third, the return of service Plaintiff provides as to Defendant Ted Bandstra fails to show that Plaintiff properly served him under Federal Rule of Civil Procedure 4.  To serve an officer or employee of the United States government sued in their individual capacity, in compliance with Rule 4(i)(3) of the Federal Rules of Civil Procedure, a plaintiff "must serve the United States and also serve the officer or employee under Rule 4(e) . . . ."  *Id.*  To serve the United States, a plaintiff "must deliver a copy of the summons and of the complaint to the United States attorney for the

district where the action is brought[.]"  Fed. R. Civ. P. 4(i)(1)(A)(i).  And to serve a United States

officer or employee, a plaintiff must deliver "a copy of [the summons] to the person to be served

with a copy of the complaint . . . at his . . . usual place of abode with any person residing therein

who is 15 years of age or older and informing the person of their contents."  Fla. Stat. §

48.031(1)(a); *see also* Fed. R. Civ. P. 4(e) ("[A]n individual . . . may be served in a judicial district

of the United States by . . . following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or where service is

made[.]"); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (explaining that a *pro

se* party must abide by "the relevant law and rules of court, including the Federal Rules of Civil

Procedure").  Here, there is no indication that Plaintiff ever served Retired Magistrate Judge Ted

Bandstra at his usual place of abode.  *See* ECF No. [63] at 4 (showing the summons was served at

"99 NE 1st Ct, 3rd Floor, US Courthouse, Miami, FL 33128").[13]  Thus, Plaintiff has not properly

served this Defendant to date.

Finally, Plaintiff does not refer to any of the other unserved Defendants — Stanley Birch,

Joseph P. Farina, James Caruso, Robert Dube, and Miami-Dade Police Department — let alone

how he plans to effectuate service on them if provided the extension of time he requests in the

Motion.  *See generally id.*  In short, this case has been pending in federal court for nearly five

months, and Plaintiff has failed to show good cause for his failure to serve Defendants Stanley

Birch, Joseph P. Farina, James Caruso, Robert Dube, Miami-Dade Police Department, and Ted

Bandstra or for his request for a 60-day extension of time to serve them. Therefore, I recommend

that these Defendants be dismissed pursuant to Federal Rule of Civil Procedure Rule 4(m).

---

[13] The return of service states that service occurred on the third floor of one of the U.S. Courthouses in
Miami.  The local Civil Division of the U.S. Attorney's Office is located on the third floor of one of the
U.S. Courthouses in Miami.  However, the address for that courthouse is 99 N.E. 4th Street, Miami, FL
33132.

## IV.  CONCLUSION

Accordingly, I respectfully **RECOMMEND** the following:

1. The Federal Defendants' Motion to Dismiss, **ECF No. [9]**, should be **GRANTED** and Plaintiff's claims against Defendants Chief Circuit Judge William H. Pryor, Jr., Senior Circuit Judge Gerald Tjoflat, Senior Circuit Judge Lanier Anderson III, Senior Circuit Judge Edward Carnes, Senior Circuit Judge Joel Dubina, Senior Circuit Judge James Edmondson, Senior Circuit Judge Frank Hull, Senior Circuit Judge Charles Wilson, Retired Circuit Judge Rosemary Barkett, and Clerk of Court David Smith of the United States Court of Appeals for the Eleventh Circuit; Senior District Judge William Zloch, Senior District Judge Joan Lenard, Senior District Judge Federico Moreno and District Judge Jose Martinez of the United States District Court for the Southern District of Florida; Marco Rubio, United States Senator and Frederica Wilson, United States Representative should be **DISMISSED WITH PREJUDICE**.

2. The City of Coral Gables and Coral Gables Police Department's Motion to Dismiss, **ECF No. [34]**, should be **GRANTED** and Plaintiff's claims against the Defendants City of Coral Gables and Coral Gables Police Department should be **DISMISSED WITH PREJUDICE**.

3. The American Arbitration Association's Motion to Dismiss, **ECF No. [10]**, should be **GRANTED** and Plaintiff's claims against Defendant American Arbitration Association should be **DISMISSED WITH PREJUDICE**.

CASE NO. 24-CV-20381-MOORE/Elfenbein

4.  Magnetic Resonance Institute's Motion to Dismiss, **ECF No. [11]**, should be **GRANTED** and Plaintiff's claims against Magnetic Resonance Institute should be **DISMISSED WITH PREJUDICE**.

5.  Plaintiff's pending *pro se* Motions, **ECF Nos. [14, 15, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 40, 41, 42, 52, 53, 54, 55, 57, 58, 60, 64, 66, 67, 68, 69]**, should be **DENIED** for violating the Honorable Marcia G. Cooke's Order designating Plaintiff a restricted filer, *Montford v. All Supreme Court Justices, et al.*, No. 08-CV-21778, ECF No. [28] (S.D. Fla. Aug. 8, 2008).

6.  Plaintiff's Motion for a 60-day Extension of Time to Serve the Unserved Defendants, **ECF No. [63]**, should be **DENIED**; and Defendants Stanley Birch, Marcia G. Cooke, Ted Bandstra, Joseph P. Farina, James Caruso, Robert Dube, and Miami-Dade Police Department be **DISMISSED WITHOUT PREJUDICE** as parties to this action pursuant to Federal Rule of Civil Procedure Rule 4(m).

7.  Defendant Ted Bandstra's Motion for Enlargement of Time to respond to the Complaint, **ECF No. [71]**, be **DENIED AS MOOT**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 24-CV-20381-MOORE/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on June 25, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:     All Counsel of Record

        John Montford, *PRO SE*
        2241 Northwest 188 Terrace
        Miami, Florida 33056